# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

|  |  |
|---|---|
| CISCO SYSTEMS, INC., a California corporation; CISCO TECHNOLOGY, INC., a California corporation, | |
| Plaintiffs, | |
| v. | Civil Action No. 3:20-cv-02588-K |
| MUSHKIN, INC., a Colorado corporation (d/b/a ENHANCED NETWORK SYSTEMS); JEFFREY RAMEY, an individual; DOES 1-10, | |
| Defendants. | |

## DEFENDANT MUSHKIN, INC.'S MOTION TO DISMISS PURSUANT TO FRCP 12(b)(6)

Defendant Mushkin, Inc. (d/b/a Enhanced Network Systems, hereinafter "ENS"), by and through this motion, seeks the dismissal of all Claims for Relief in Plaintiff's Complaint under Fed. R. Civ. P. 12(b)(6).

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ................................................................................................ 1

II.    STATEMENT OF ISSUES TO BE DECIDED ................................................. 2

III.   PROCEDURAL HISTORY ................................................................................ 2

IV.   CHOICE OF LAW ............................................................................................. 3

V.    LEGAL STANDARD ON THE MOTION TO DISMISS ................................ 3

VI.   LEGAL ARGUMENT ........................................................................................ 4

      A.    Plaintiffs Cannot State a Claim for Aiding and Abetting Fraud Under Texas Law. .......................................................................................... 4

      B.    Plaintiffs Cannot State a Claim for Aiding and Abetting Under California Law or the Restatement of Torts ............................................................ 5

           1.    There Are No Allegations that ENS Possessed Actual Knowledge that Ramey's Conduct Breached a Duty to Cisco or that ENS Gave "Substantial Assistance or Encouragement" to Ramey to Breach Such Unknown Duty (Method 1) ............................................................ 6

           2.    There Is No Allegation that ENS Gave Substantial Assistance or Encouragement to Ramey to Breach an Unknown Duty (Method 2) ......... 8

      C.    Plaintiffs Have Failed to State a Claim for Conspiracy to Commit Fraud. ............ 9

      D.    Plaintiffs Have Failed to State a Cause of Action for Negligent Misrepresentation ................................................................................... 10

      E.    Plaintiffs Have Failed to State a Timely Cause of Action for Trademark Counterfeiting, Trademark Infringement, or Federal Unfair Competition .... **Error! Bookmark not defined.**

      F.    Plaintiffs Have Failed to State a Claim for Unjust Enrichment ........................... 13

      G.    Plaintiffs Have Failed to State a Claim for Inducing Breach or Interference with Contract ..................................................................................... 14

      H.    Plaintiffs Have Failed to State a Claim under California Unfair Competition Law. ......................................................................................................... 16

           1.    Plaintiffs Have Failed to State Facts to Support a Claim under Any of the Three Prongs of California's Unfair Competition Law ................ 17

i

2.      Plaintiffs' UCL Claim Is Preempted by Federal Law................................ 18

VII.    CONCLUSION............................................................................................................. 19

# TABLE OF AUTHORITIES

Page

**Cases**

*Ball v.  American Trial Lawyers Ass'n,*
  14 Cal.App.3d 289 (1971) ......................................................................... 18

*Casey v. United States Bank Nat'l Ass'n,*
  127 Cal.App.4th 1138 (2005) .............................................................. 5, 6, 7

*Cel Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.,*
  20 Cal.4th 163 (1999) ............................................................................... 17

*Committee on Children's Television v. General Foods Corp.,*
  35 Cal.3d 197 (1983) ................................................................................. 17

*Kidron v. Movie Acquisition Corp.,*
  40 Cal. App. 4th 1571 (1995) ............................................................... 9, 10

*West v. JPMorgan Chase Bank, N.A.*
  214 Cal.App.4th 780 (2013) ...................................................................... 10

**Federal**

*Academy of Motion Picture Arts & Sciences v. Creative House Promotions, Inc.,*
  944 F.2d 1446 (9th Cir. 1991) .................................................................. 18

*Airborne Freight Corp., Inc. v. C.R. Lee Enters., Inc.*
  847 S.W.2d 289 (Tex. App.--El Paso 1992, writ denied)......................... 11

*Allied Vista, Inc. v. Holt*
  987 S.W.2d 138 ......................................................................................... 11

*Amoco Prod. Co. v. Smith*
  946 S.W.2d 162 (Tex.App.--El Paso 1997).............................................. 14

*Armco, Inc. v. Armco Burglar Alarm Co.,*
  693 F.2d 1155 (5th Cir. 1982). ................................................................. 13

*Ashcroft v. Iqbal*
  556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009 .......................... 5

*Austin v. Duval*
  735 S.W.2d 647 (Tex. App. -- Austin 1987) ............................................. 14

*Benchmark Electronics, Inc. v. J.M. Huber Corp.*
  343 F.3d 719 (5th Cir. 2003) ...................................................................... 5

*Bridgestone/Firestone Research, Inc. v. Auto Club de L'Ouest de la France*
  245 F.3d 1359 (Fed. Cir. 2001) ................................................................ 13

*Browning–Ferris, Inc. v. Reyna*
  865 S.W.2d 925 (Tex. 1993).................................................................... 15

*Caterpillar, Inc. v. Williams,*
    482 U.S. 386 (1987)..................................................................................... 18

*Chon Tri. v. J.TT.*
    162 S.W3d 552 (Tex. 2005)........................................................................ 9

*City of Clinton, Ark. v. Pilgrim's Pride Corp.*
    632 F.3d 148 (5th Cir. 2010) ..................................................................... 5

*City of Corpus Christi v. Heldenfels Bros., Inc.*
    802 S.W.2d 35, 40 (Tex.App.--Corpus Christi 1990), *affm'd*, 832 S.W.2d 39 ....... 14

*Conan Props., Inc. v. Canons Pizza, Inc.*
    752 F.2d 145 (5th Cir. 1985) ..................................................................... 13

*Dastar Corp. v. Twentieth Century Fox Film Corp.,*
    539 U.S. 23 (2003)..................................................................................... 18

*Dukes v. U.S. Healthcare,*
    57 F.3d 350 (3d. Cir. 1995) ....................................................................... 18

*Ellis v. Great Southwestern Corp.*
    646 F.2d 1099 (5th Cir. 1981) ................................................................... 3

*Elvis Presley Enters., Inc. v. Capece*
    141 F.3d 188 (5th Cir. 1998) ..................................................................... 13

*Excess Underwriters at Lloyd's, London v. Frank's Casing Crew & Rental Tools, Inc.*
    246 S.W.3d 42, 53 (Tex. 2008)................................................................... 5

*Federal Land Bank Ass'n v. Sloane*
    825 S.W.2d 439 (Tex. 1991)....................................................................... 10

*Fernandez-Montes v. Allied Pilots Ass'n*
    987 F.2d 278 (5th Cir. 1993) ..................................................................... 4

*Friberg-Cooper Water Supply Corp. v. Elledge*
    197 S.W.3d 826 (Tex. App.--Fort Worth 2006), ......................................... 14

*Goepel v. National Postal Mail Handlers Union,*
    36 F.3d 306 (3d. Cir. 1994) ....................................................................... 18

*Grant Thornton LLP v. Prospect High Income Fund*
    314 S.W.3d 913 (Tex. 2010)....................................................................... 11

*Hancock v. Chicago Title Ins. Co.*
    635 F. Supp. 2d 539 (N.D. Tex. 2009) ....................................................... 13

*Heldenfels Bros., Inc. v. Corpus Christi*,
    832 S.W.2d 39 (Tex. 1992)..................................................................... 14, 15

*Herron v. Herron*,
    255 F.2d 589 (5th Cir. 1958) ..................................................................... 12

*Highland Crusader Offshore Partners., L.P. v. LifeCare Holdings, Inc.*
    2008 U.S. Dist. LEXIS 6622943 at *43 (N.D. Tex. Aug. 27, 2008)................ 15

*Hill v. Hunt*
    2010 U.S. Dist. LEXIS 312, *11 (N.D. Tex. January 4, 2010...................................... 4

*In re First Alliance Mortg. Co.*,
    471 F.3d 977 (9th Cir. 2006) ................................................................................. 6

*International Order of Job's Daughters v. Lindeburg & Co.*,
    633 F.2d 912 (9th Cir. 1980) ................................................................................. 17

*John Paul Mitchell Sys. v. Randalls Food Markets Inc.*,
    17 S.W.3d 721 (Tex. App.--Austin 2000) .............................................................. 15

*Juhl v. Airington*
    936 S.W.2d 640 (Tex. 1996)................................................................................... 9

*Majd v. Bank of America, N.A.*
    243 Cal. App.4th 1293 (2015). .............................................................................. 10

*Metropolitan Life Ins. Co. v. Taylor*,
    481 U.S. 58 (1987).................................................................................................. 18

*Mowbray v. Avery*
    76 S.W.3d 663 n.25 (Tex.App.--Corpus Christi ..................................................... 13

*Neilson v. Union Bank of Cal., N.A.*,
    290 F. Supp. 2d 1101 (C.D. Cal. 2003) .................................................................. 6

*Newby v. Enron Corp.* (*In re Enron Corp. Secs., Derivative & ERISA Litig.*)
    761 F. Supp. 2d 504 (S.D. Tex. 2011) .................................................................... 5

*O'Kane v. Coleman*
    2008 Tex. App. LEXIS 4908 at *5 (Tex. App.-Houston [14th Dist.] 2008) .............. 4

*Playboy Enters., Inc. v. Editorial Caballero, S.A. de C.V.*
    202 S.W.3d 250 (Tex. App.—Corpus Christi 2006) ............................................... 15

*Pope v. Garrett*,
    147 Tex. 18, 211 S.W.2d 559  (Tex. 1948.............................................................. 14

*Prudential Ins. Co. of Am. v. Fin. Review Servs., Inc.*
    29 S.W.3d 74 (Tex. 2000)....................................................................................... 15

*Rimkis Consulting Grp., Inc. v. Cammarata*,
    688 F. Supp. 2d 598, (S.D. Tex. 2010) .................................................................. 15

*Rosal v. First Federal Bank of California*,
    671 F.Supp.2d 1111 (N.D. Cal. 2009) .................................................................... 14

*S. Tex. Neon Sign Co. v. Ixtapa, Inc.*
    2009 U.S. Dist. LEXIS 148169 at *36-37 (S.D. Tex. August 14, 2009).................. 13

*S.V. v. R.V.*
    933 S.W.2d 1 (Tex. 1996)....................................................................................... 12

*Seaman v. Sedgwick, LLP*,
    No. 11-664, 2012 U.S. Dist. LEXIS 9917 (C.D. Cal. Jan. 26, 2012) ...................... 5

*Segner v. Sinclair Oil & Gas Co*.
    2012 U.S. Dist. LEXIS 193617 at *60-61 (N.D. Tex. June 4, 2018). .................................. 4, 5

*Tinker, Inc. v. Poteet*
    2017 U.S. Dist. LEXIS 161852 at *19 (N.D. Tex. Sept. 30, 2017)........................................ 12

*Tippett v. Hart*
    497 S.W.2d 606 (Tex. App.--Amarillo 1973)........................................................................ 15

*United States v. Bantau*
    907 F. Supp. 988, (N.D. Tex. 1995) ...................................................................................... 12

*Washington v. U. S. Dep't of Hous. & Urban Dev.*,
    953 F. Supp. 762, 768 (N.D. Tex. 1996) .................................................................................. 3

*Williams v. WMX Techs*.
    112 F.3d 175 (5th Cir. 1997) ................................................................................................. 11

**Statutes**

Cal. Bus. & Prof. Code § 17200 ...................................................................................... 1, 3, 17

Fed. R. Civ. P. 9(b) .................................................................................................................. 4

## I.      **INTRODUCTION**

Plaintiffs Cisco Systems, Inc. and Cisco Technology, Inc. (hereinafter collectively "Plaintiffs" or "Cisco") have alleged nine causes of action against Defendant ENS: (1) inducing breach and interfering with contract; (2) aiding and abetting fraud; (3) conspiracy; (4) negligent misrepresentation; (5) trademark infringement; (6) trademark counterfeiting; (7) federal unfair competition; (8) California unfair business practices [Cal. Bus. & Prof. Code § 17200]; and (9) unjust enrichment.  Defendant ENS moves to dismiss each cause of action alleged.

Plaintiffs' Complaint alleges that Jeffrey Ramey ("Ramey"), "a Senior Account Manager at Cisco Authorized Reseller General Data Tech ("GDT")," colluded with "secondary market reseller ENS" to perpetrate a fraud scheme against Cisco to obtain discounts on Cisco's products. Complaint, ¶ 1.  While Cisco alleges this scheme involved numerous false statements to Cisco regarding a falsified "end user" of the products, the Complaint is devoid of any allegation that ENS made any such statements to Cisco.

Instead, the Complaint establishes that Ramey was the sole Defendant who had any contact with Cisco related to this alleged scheme and only implicates ENS by repeatedly alleging "Ramey and ENS worked together."  Complaint, ¶ 32.  This unsupported "collective" accusation is insufficient to support Cisco's Third, Fourth, and Fifth claims against ENS for aiding and abetting fraud, conspiracy, or negligent misrepresentation.  Moreover, the controlling law for the State of Texas does not recognize Cisco's claims for "aiding and abetting," which should be dismissed.

Cisco's remaining claims directed to ENS fair no better.  Cisco's Sixth, Seventh, and Eighth claims for trademark infringement, trademark counterfeiting, and federal unfair competition are time-barred based on Cisco's more than 11-year delay in bringing these known claims against ENS.  Next, while the Complaint alleges as its Tenth Cause of Action a claim for unjust enrichment, there are no allegations present here to support an award for restitution.  The Complaint additionally fails to allege the requisite elements of Cisco's First Cause of Action for "inducing breach and interfering with contract" as it is silent as to the identification of any specific

1

contracts at issue, that any contract was actually interfered with, or that any contract was in fact breached. Finally, Cisco has failed to state a claim under any prong of California's UCL, and to the extent the UCL claim is predicated on allegations of trademark infringement, the UCL claim is preempted by federal law.

## II.   STATEMENT OF ISSUES TO BE DECIDED

The issue to be decided upon this Motion is whether this Court should dismiss each cause of action alleged against Defendant ENS for failure to state a claim.

## III.   PROCEDURAL HISTORY

Cisco filed its Complaint against ENS on November 14, 2019, in the United States District Court for the Northern District of California.  [Dkt. 1.]  The Complaint alleges ten claims for relief: (1) Inducing Breach and Interfering with Contract; (2) Fraud; (3) Aiding and Abetting Fraud; (4) Conspiracy; (5) Negligent Misrepresentation; (6) Trademark Infringement, 15 U.S.C. § 1114; (7) Trademark Counterfeiting, 15 U.S.C. § 1114; (8) Federal Unfair Competition, 15 U.S.C. § 1125; (9) California Unfair Business Practices, Cal. Bus. & Prof. Code § 17200, et. seq.; and, (10) Unjust Enrichment. All but the fraud claim are directed at ENS.

On January 24, 2020, ENS filed two Motions to Dismiss: a Motion to Dismiss pursuant to Rules[1] 12(b)(2) and 12(b)(3) for lack of personal jurisdiction and improper venue or, in the alternative, Motion to Transfer Venue under 28 U.S.C. §§ 1404(a) and 1406(a), Dkt. 21 ("Motion to Transfer Venue"); and a Motion to Dismiss pursuant to Rule 12(b)(6) for failure to state a claim, Dkt. 22 ("Rule 12(b)(6) Motion to Dismiss").

On August 28, 2020, the Honorable Saundra Brown Armstrong, Senior United States District Judge for the Northern District of California, issued an Order granting ENS' Motion to Transfer Venue.  [Dkt. 61.]  In granting ENS' Motion to Transfer Venue, the Court concluded "Cisco has failed to carry its burden of demonstrating that venue is proper in this District. Given that both Defendants agree that this action could be pursued against them in the Northern District

---

[1] Unless otherwise noted, all references to "Rule" or "Rules" refer to the Federal Rules of Civil Procedure.

of Texas, the Court finds that transferring venue to that district pursuant to § 1406(a), as opposed to dismissal of the action or transfer to the District of Colorado, is appropriate. Alternatively, as will be discussed below, a transfer of venue to the Northern District of Texas is justified under § 1404(a)."  [Dkt. 61 at p. 11.]  Judge Armstrong denied ENS' Rule 12(b)(6) Motion to Dismiss without prejudice to renewal in this Court.  [Dkt. 61 at p. 22.]

On August 31, 2020, this case was transferred from the Northern District of California to the Northern District of Texas.  ENS hereby renews its Rule 12(b)(6) Motion to Dismiss.

## IV.    CHOICE OF LAW

At issue in this Motion are questions of substantive state law as well as whether Cisco failed to timely state a claim for Federal Trademark Infringement, Federal Trademark Counterfeiting, and Federal Unfair Competition.  This Court must apply Texas' choice of law rules and the substantive law of Texas in deciding these claims.  *Ellis v. Great Southwestern Corp.*, 646 F.2d 1099, 1110 (5th Cir. 1981) ("[F]ollowing a section 1406(a) transfer, regardless of which party requested the transfer or the purpose behind the transfer, the transferee court must apply the choice of law rules of the state in which it sits"); *see also* 1 Moore's Federal Practice P 0.145 [4.-5] at 1613 (2d ed. 1977) ("the substantive law of the transferee state should apply to cases transferred under § 1406(a). . .").

There is no set statute of limitations for trademark infringement under federal law. Therefore, this Court should apply Texas statutes of limitation to Cisco's trademark claims.  *Ellis*, 646 F.2d at 1111.  Moreover, this Court should dismiss Cisco's claims of aiding and abetting fraud and violations of the California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, as these are not cognizable claims under Texas law.  Cisco's state unfair competition claim is also preempted by federal law.

## V.    LEGAL STANDARD ON THE MOTION TO DISMISS

Rule 12(b)(6) provides for dismissal of a claim if the complaint fails to state a claim upon

which relief can be granted. *Washington v. U. S. Dep't of Hous. & Urban Dev.*, 953 F. Supp. 762, 768 (N.D. Tex. 1996). In determining whether dismissal is warranted, the Court accepts as true all well-pleaded allegations contained in the plaintiff's complaint. *Id.* However, the court need not credit bare legal conclusions. *See Ashcroft v. Iqbal*, 556 U.S. 662, 679, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009); *Fernandez-Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284 (5th Cir. 1993) ("conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss.")

The Federal Rules of Civil Procedure impose a heightened pleading requirement to support claims sounding in fraud, requiring that such claims be pled with particularity. *See* Fed. R. Civ. P. 9(b); *City of Clinton, Ark. v. Pilgrim's Pride Corp.*, 632 F.3d 148, 153 (5th Cir. 2010). "[A]rticulating the elements of fraud with particularity requires a plaintiff to specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *Williams v. WMX Techs.*, 112 F.3d 175, 177 (5th Cir. 1997). "Put simply, Rule 9(b) requires 'the who, what, when, where, and how' to be laid out" with respect to a fraud claim. *Benchmark Electronics, Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 724 (5th Cir. 2003) (internal quotations omitted). The particularity requirement of Rule 9(b) applies with equal force to claims sounding in fraud, such as Cisco's claim for aiding and abetting fraud. *Hill v. Hunt*, 2010 U.S. Dist. LEXIS 312, *11 (N.D. Tex. January 4, 2010).

## VI.    LEGAL ARGUMENT

### A.    Plaintiffs Cannot State a Claim for Aiding and Abetting Fraud Under Texas Law.

Plaintiffs claim Defendant ENS aided and abetted Ramey's fraud. Aiding and abetting fraud is a state law claim, and there is no common law tort for aiding and abetting fraud in Texas. *Highland Crusader Offshore Partners., L.P. v. LifeCare Holdings, Inc.*, 2008 U.S. Dist. LEXIS 6622943 at *43 (N.D. Tex. Aug. 27, 2008) (citing *O'Kane v. Coleman*, 2008 Tex. App. LEXIS 4908 at *5 (Tex. App.-Houston [14th Dist.] 2008) ("a Texas court of appeals court recently stated that no Texas cases support the idea that aiding and abetting fraud is a tort separate from

4

conspiracy."); *Segner v. Sinclair Oil & Gas Co*., 2012 U.S. Dist. LEXIS 193617 at *60-61 (N.D. Tex. June 4, 2018). Therefore, the claim should be dismissed as it is redundant of the conspiracy claim and not a cognizable cause of action.

### B.     Plaintiffs Cannot State a Claim for Aiding and Abetting Under California Law or the Restatement of Torts[2]

Even if this Court finds that California law applies (or that aiding and abetting fraud is a cognizable tort under Texas law), Cisco's complaint fails to state a claim for aiding and abetting. To allege aiding and abetting fraud under California law, a plaintiff must show that the defendant *knowingly*: (1) substantially assisted or encouraged another to breach a duty, or (2) substantially assisted another's tort through an independently tortious act.  *See Casey v. United States Bank Nat'l Ass'n,* 127 Cal.App.4th 1138, 1144.  The elements of a claim for aiding and abetting fraud under the Restatement (Second) of Torts § 876(b) (1979) are: (1) the primary tort-feasor must commit a tort that causes an injury to the plaintiff; (2) the defendant must know that the primary tort-feasor's conduct constitutes a breach of duty; and (3) the defendant must substantially assist or encourage the primary tort-feasor in the achievement of the breach.

Thus, at a minimum, cases discussing liability for aiding and abetting intentional torts require knowledge of, and substantial assistance in, the underlying fraud.  *Segner v. Sinclair Oil & Gas Co*., 2012 U.S. Dist. LEXIS 193617 at *45; *Simi Mgmt. Corp. v. Bank of Am., N.A*., 930 F. Supp. 2d 1082, 1098 (N.D. Cal. 2013) (citing *Seaman v. Sedgwick, LLP*, No. 11-664, 2012 U.S. Dist. LEXIS 9917 (C.D. Cal. Jan. 26, 2012) (liability for aiding and abetting attaches if the tortfeasor "knows the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other to so act, or gives substantial assistance to the other in accomplishing

---

[2] As noted above, Texas substantive law applies to this case.  However, California law is also discussed herein should the Court conclude California law applies to this case. *See Excess Underwriters at Lloyd's, London v. Frank's Casing Crew & Rental Tools, Inc*., 246 S.W.3d 42, 53 (Tex. 2008) (noting that Texas courts presume the laws of other states are the same as those in Texas); *see also Janvey v. Suarez*, 978 F. Supp. 2d 685, 693–94 (N.D. Tex. 2013) (proceeding to analyze motion to dismiss under Texas law where defendant had not proven the applicability of other law).

a tortious result and the [entity]'s own conduct, separately considered, constitutes a breach of duty to the third person"); (*Newby v. Enron Corp*. (*In re Enron Corp. Secs.*, *Derivative & ERISA Litig.*), 761 F. Supp. 2d 504, 557 (S.D. Tex. 2011) (applying New York law) ("Actual knowledge and substantial assistance are separate elements that must be independently alleged with particularity").

### 1. There Are No Allegations that ENS Possessed Actual Knowledge that Ramey's Conduct Breached a Duty to Cisco or that ENS Gave "Substantial Assistance or Encouragement" to Ramey to Breach Such Unknown Duty (Method 1)

The first of these two methods of proof requires that defendant "have actual knowledge of the specific primary wrong the defendant substantially assisted." *Simi Mgmt. Corp., supra*, 930 F.Supp.2d at 1098-99 (citing *In re First Alliance Mortg. Co.*, 471 F.3d 977, 993 (9th Cir. 2006) (citing *Casey, supra*, 127 Cal. App. 4th at 1146)). That a defendant had "vague suspicion of wrong doing" or knew of "wrongful or illegal conduct" does not suffice. *Id.* Federal courts have found that the phrase 'knew or should have known' does not plead actual knowledge." *Neilson v. Union Bank of Cal., N.A.*, 290 F. Supp. 2d 1101, 1118-19 (C.D. Cal. 2003).

Here, Plaintiff accuses Defendant Ramey of fraud, and alleges Defendant ENS "aided and abetted" that fraud. Plaintiffs' Complaint alleges at Paragraph 143:

> 143. With respect to Ramey's fraudulent misstatements and omissions to Cisco in furtherance of the "Provident" scheme, ENS had knowledge of the wrong Ramey was committing, provided substantial assistance to Ramey, cooperated or agreed to cooperate in making oral and written misrepresentations to Cisco, and knowingly benefitted from such fraud. ENS also agreed to participate in the fraud against Cisco and performed various overt acts, as described more fully above, in furtherance of the fraud.

However, Cisco has not pled any facts to support a claim that ENS knew what duty Ramey had to Cisco, if any (indeed, Ramey was an employee of GDT, not Cisco), or whether any alleged misconduct by Ramey violated any such duty. Instead, Plaintiffs simply allege, "ENS had knowledge of the wrong Ramey was committing." Complaint, at ¶ 43. This is insufficient. *See In re First Alliance Mortg. Co.*, *supra*, 471 F.3d at 993. Indeed, Cisco's assertion that ENS had "knowledge of the wrong" epitomizes what courts have held to be insufficient to plead an aiding

and abetting claim. *Simi Mgmt. Corp., supra*, 930 F. Supp. 2d at 1098-99 (citing *In re First Alliance Mortg. Co*., *supra*, 471 F.3d at 993 (citing *Casey, supra*, 127 Cal. App. 4th at 1146) ["vague suspicion of wrong doing" or knew of "wrongful or illegal conduct" allegations are insufficient]).

Illustrating the deficiencies in Plaintiffs' allegations, Plaintiffs plead at length what Cisco Authorized Resellers, such as GDT/Ramey, are permitted to do with Cisco products but point out several times that ENS is <u>not</u> an Authorized Reseller.  Complaint, ¶¶ 1, 20.  Despite claiming that ENS was aiding and abetting Ramey's alleged fraud, Cisco repeatedly alleges that ENS was submitting invoices to Ramey on ENS' own invoicing and letterhead (*Id*. at ¶¶ 62, 63), that those invoices clearly designated the purchaser (either ENS' true customers or for ENS itself (*Id*. at ¶¶ 39, 46, 50)), <u>and</u> that ENS was requesting shipments of the Cisco products be sent directly to ENS' address.  (*Id*. at ¶ 40.)  In fact, Cisco alleges "Ramey submitted multiple deals under the 'Provident' name even though <u>ENS was clear with Ramey</u> that the end user was, in fact, not Provident Realty Advisors…"  (*Id*. at ¶ 50, emphasis added.)  Thus, there is simply nothing about ENS' alleged conduct that amounts to fraudulent activity, and certainly the alleged conduct does not sufficiently state a claim for being a party to a fraudulent scheme, or amount to aiding someone in a fraudulent scheme.  Instead, based on Cisco's allegations, nothing nefarious is alleged to have been done, or was even intended to be done, by ENS.

Accordingly, the Complaint does not support the requisite element of aiding and abetting that ENS "[knew] [Ramey's] conduct constitute[d] a breach of duty."  The factual allegations in the Complaint only demonstrate that ENS placed orders with GDT through Ramey for Cisco products in a proper manner, *see e.g*., Complaint, ¶¶ 36; 39; 44; 46; 47; 49-50; 51; and that ENS in fact instructed Ramey to cease any mis-designation of customers, *see* Complaint, ¶ 96.  There are <u>no</u> specific factual allegations to support that ENS was engaged in any wrongdoing, let alone that ENS had actual knowledge of Ramey's alleged legal duties to Cisco or whether Ramey's conduct breached any such duties.  Because the Complaint fails to allege that ENS knew what duty

Ramey had to Cisco, if any, or whether any alleged misconduct by Ramey violated any such duty, the Third Cause of Action for Aiding and Abetting Fraud must be dismissed.

### 2. There Is No Allegation that ENS Gave Substantial Assistance or Encouragement to Ramey to Breach an Unknown Duty (Method 2)

The second method of establishing an aiding and abetting claim is that the plaintiff must allege that the defendant substantially assisted another's tort through an independently tortious act. *See Casey v. United States Bank Nat'l Ass'n*, *supra*, 127 Cal.App.4th at 1144.  However, all representations made to Cisco alleged to be part of the "Provident scheme" were made by Ramey, and there is no allegation that supports a contention that ENS substantially assisted or encouraged Ramey's conduct—in fact, Cisco's allegations are that ENS told Ramey to stop once it was notified of the customer mis-designation.  Complaint, ¶ 96.

It is significant that Cisco alleges "Cisco's investigation has revealed that Ramey would receive requests for orders from ENS—for either ENS' true end customers, or for product to stock ENS' shelves—and process them under the 'Provident' account name at Cisco, requesting steep discounts based on falsified information."  *Id.* at ¶ 39, emphasis added.  The Complaint additionally alleges, "Ramey submitted multiple deals under the 'Provident' name even though ENS was clear with Ramey that the end customer was, in fact, not Provident Realty Advisors…"  *Id.* at ¶ 50.  In other words, the Complaint simply alleges ENS placed orders with GDT/Ramey.  That cannot be construed as substantially assisting another to commit a wrong.

The Complaint provides no articulable facts to support any claim of wrongdoing beyond ENS simply purchasing product from GDT/Ramey.  ENS properly identified the customer or purchaser of the Cisco product to Ramey/GDT on its letterhead, as Cisco acknowledges.  *Id.* at ¶¶ 62-63.)  It was only later that ENS was notified of Ramey's mis-designation of "Provident" as the purchaser of the Cisco products, instead of the customer or purchaser identified by ENS.  And, as set forth in Cisco's Complaint, ENS requested that Ramey cease mis-designating the purchaser, and requested that Ramey correct the prior customer mis-designations so warranty protection could be properly extended to the products purchased by ENS.  *Id.* at ¶ 96.  Indeed, as Cisco uncovered

Ramey/GDT's designation of Provident or PRA as an end-customer, ENS requested that Ramey/GDT stop that activity and correct the customer designation on past purchases so warranty coverage could be extended to those products. *Id.* at ¶ 97.

Even under Cisco's allegations, ENS' actions are the antithesis of "substantial encouragement" or "substantial assistance" with Ramey's alleged fraud or breach of duty. Because the Complaint fails to allege that ENS provided Ramey with "encouragement" or "substantial assistance" to conduct his alleged misconduct, the Third Cause of Action for Aiding and Abetting Fraud must be dismissed as to ENS.

**C.  Plaintiffs Have Failed to State a Claim for Conspiracy to Commit Fraud**.

A conspiracy claim requires a specific intent to agree to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means. *Juhl v. Airington*, 936 S.W.2d 640, 644 (Tex. 1996). To state a claim for conspiracy to commit fraud, Plaintiffs must state a claim for conspiracy. The elements of a conspiracy claim are: (1) the defendant was a member of a combination of two or more persons; (2) the object of the combination was to accomplish an unlawful purpose or a lawful purpose by unlawful means; (3) the members had a meeting of the minds on the object or course of action; (4) one of the members committed an unlawful, overt act to further the object or course of action; and (5) the plaintiff suffered injury as a proximate result of the wrongful act. *Chon Tri. v. J.TT*., 162 S.W3d 552, 556 (Tex. 2005).[3]

Plaintiffs have failed to allege that ENS formed a conspiracy with Ramey or engaged in any wrongful conduct in furtherance of the alleged conspiracy. As demonstrated above, based on Cisco's allegations, nothing nefarious is alleged to have been done by ENS' actions. The Complaint describes ENS placing orders with Ramey for Cisco products in the normal course of its business—which the Complaint concedes were for "ENS' true end customers, or for product to

---

[3] To allege a conspiracy to commit fraud under California law, a plaintiff must show: (1) the formation and operation of the conspiracy, (2) wrongful conduct in furtherance of the conspiracy, and (3) damages arising from the wrongful conduct. *Kidron v. Movie Acquisition Corp.*, 40 Cal.App.4th 1571, 1581 (1995).

stock ENS' shelves (Complaint, ¶ 39) and that "ENS **was clear** with Ramey that the end customer was, in fact, not Provident Realty Advisors" (*Id.* at ¶ 50, emphasis added).  As such, there is nothing in the Complaint that supports the requisite elements for a conspiracy.

Being "**clear**" about end customers or shipment destinations with Ramey/GDT is <u>not</u> a civil conspiracy to commit fraud.  The product was being shipped directly to ENS in Colorado, even under the purchase orders sent to Cisco by GDT/Ramey—there is no conspiracy to conceal the destination of these products.  There are simply no allegations in the Complaint to support the contention that ENS had a meeting of the minds with Ramey as to an unlawful purpose, or that ENS engaged in any "unlawful, overt act to further the object" of the alleged conspiracy.  Instead, the Complaint describes ENS having normal sales meetings with Ramey regarding the purchase of product, and ENS placing orders with Ramey for products in the normal course of business.  Further, because Cisco alleges "ENS was clear with Ramey" that the products were not for Provident (*Id.* at ¶ 50), the Complaint confirms that *Ramey*—not ENS—made misrepresentations to Cisco.  Simply put, there are <u>no</u> specific factual allegations to support that ENS was engaged in any wrongdoing.  Because there are no allegations in the Complaint to support the formation of a conspiracy or any independent wrongdoing on the part of ENS, Plaintiffs' Fourth Cause of Action for Conspiracy as to ENS must be dismissed.

### D. Plaintiffs Have Failed to State a Cause of Action for Negligent Misrepresentation.

The elements of a cause of action for negligent misrepresentation are: (1) the representation is made by a defendant in the course of his business, or in a transaction in which he has a pecuniary interest; (2) the defendant supplies "false information" for the guidance of others in their business; (3) the defendant did not exercise reasonable care or competence in obtaining or communicating the information; and (4) the plaintiff suffers pecuniary loss by justifiably relying on the representation. [4]  *Federal Land Bank Ass'n v. Sloane*, 825 S.W.2d 439, 442 (Tex. 1991).

_____

[4]The elements of negligent misrepresentation in California are: (1) the defendant made a false representation as to a past or existing material fact; (2) the defendant made the representation without reasonable ground for believing it to be true; (3) in making the representation, the defendant intended to deceive the plaintiff; (4) the plaintiff justifiably relied on the

"Significantly, the sort of "false information" contemplated in a negligent misrepresentation case is a misstatement of existing fact, not a promise of future conduct." *Allied Vista, Inc. v. Holt*, 987 S.W.2d 138, 141 (citing *Airborne Freight Corp., Inc. v. C.R. Lee Enters.*, Inc., 847 S.W.2d 289, 294 (Tex. App.--El Paso 1992, writ denied)).  Moreover, the plaintiff must demonstrate "actual and justifiable reliance." *Grant Thornton LLP v. Prospect High Income Fund*, 314 S.W.3d 913, 923 (Tex. 2010).

Here, the Complaint alleges *Defendant Ramey* submitted the requests to Cisco that "contained false statements and representations made *by Ramey* which *Ramey* purported to be true." (Complaint, ¶ 160, emphasis added.)  The Complaint further alleges "*Ramey* made each and all of the false representations with the intent to induce Cisco to approve the special discounted pricing and sell heavily discounted Cisco products to Defendants." (*Id.* at ¶ 163, emphasis added.) While the Complaint alleges ENS was "aware" of the false representations, a cause of action for negligent misrepresentation requires that the defendant have *made* a false representation.  No such false representation by ENS to Cisco is alleged.  As set forth above, there is no allegation that ENS made any statement to Cisco, much less any statement to Cisco that could constitute a negligent misrepresentation.  Cisco claims to have known about ENS' business activities for at least 11 years; any alleged reliance on a claim contrary to ENS' standard business activity is not justified. As such, the Fifth Cause of Action for Negligent Misrepresentation as to ENS must be dismissed.

### E. Plaintiffs Have Failed to State a Timely Cause of Action for Trademark Counterfeiting, Trademark Infringement, or Federal Unfair Competition

Cisco's Sixth, Seventh, and Eighth Causes of Action assert claims for trademark infringement under the Trademark Act of 1946, 15 U.S.C. §§ 1051 et seq. (the "Lanham Act"), including Federal Trademark Infringement, Federal Trademark Counterfeiting, and Federal Unfair Competition, respectively.  Cisco's claims arising under the Lanham Act must be dismissed

---

representation; and (5) the plaintiff suffered resulting damages. *West v. JPMorgan Chase Bank, N.A*. 214 Cal.App.4th 780, 792 (2013); *Majd v. Bank of America, N.A*., 243 Cal. App.4th 1293, 1307 (2015).

because Plaintiff's own allegations demonstrate these causes of action are time-barred.  Moreover, Cisco's claims must be dismissed because the plain language of the Complaint establishes the claims are barred by the doctrine of laches.  "The defenses of limitations or laches may be asserted by a motion to dismiss for failure to state a claim if the complaint shows affirmatively that the claims are barred."  *United States v. Bantau*, 907 F. Supp. 988, 990 (N.D. Tex. 1995) (citing *Herron v. Herron*, 255 F.2d 589, 593 (5th Cir. 1958)).

The Texas statute of limitations for a Lanham Act claim is the four-year statute of limitations period applied to fraud claims under § 16.004 of the Texas Civil Practice & Remedies Code.  *Tinker, Inc. v. Poteet*, 2017 U.S. Dist. LEXIS 161852 at *19 (N.D. Tex. Sept. 30, 2017) [citations omitted].  This four-year period begins when a plaintiff discovers the fraud or could have discovered the fraud by the exercise of reasonable diligence.  *Id.* at *6 (citing S.*V. v. R.V.*, 933 S.W.2d 1, 35 (Tex. 1996)).

Cisco's Complaint was filed on November 14, 2019.  Cisco alleges that it has known about ENS' sales of Cisco's products on the secondary market for over a decade before filing its trademark infringement claims against ENS, and ENS has repeatedly indicated to Cisco that it would not stop selling Cisco product on the secondary market since 2008.  Specifically, as alleged and admitted by Cisco, Cisco has known about ENS' sales of Cisco products since 2008 (Complaint, ¶¶ 101-117), Cisco has received correspondence since 2010 from ENS indicating that it would continue to sell Cisco products on the secondary market (*Id.* at ¶¶ 105, last sentence, 117, last sentence), during the eleven years prior to filing the Complaint, Cisco has known that ENS has grown to become a "well-known" re-seller of Cisco product on the secondary market (*Id.* at ¶¶ 58 [Colin Abe of Cisco "recognized ENS as a well-known unauthorized reseller of Cisco"], 129 ["given the company's extensive experience as resellers of Cisco products in the secondary market"]), and years before filing its Complaint, Cisco knew it was fulfilling purchase orders received from Ramey/GDT for products destined to other end users <u>directly</u> to ENS' destination shipping in Colorado.  *Id.* at ¶¶ 39-40, 46-47, 49-50, 54.

12

Further, Cisco's claims are barred by the doctrine of laches.  The doctrine of laches applies where Plaintiff's "inexcusable delay…results in prejudice to the defendant."  *Elvis Presley Enters., Inc. v. Capece*, 141 F.3d 188, 205 (5th Cir. 1998) (quoting *Conan Props., Inc. v. Canons Pizza, Inc.*, 752 F.2d 145, 153 (5th Cir. 1985)).  The defense consists of three elements: (1) an unreasonable delay in asserting a right or claim; (2) that is not excused; and (3) that results in undue prejudice to the defendant.  *See Armco, Inc. v. Armco Burglar Alarm Co.*, 693 F.2d 1155, 1161 (5th Cir. 1982).

Cisco's delay of more than a decade is unreasonable and inexcusable.  "[C]ourts have looked to when any part of the claimed wrongful conduct began to determine if laches applied."  *S. Tex. Neon Sign Co. v. Ixtapa, Inc.*, 2009 U.S. Dist. LEXIS 148169 at *36-37 (S.D. Tex. August 14, 2009) (citing *Bridgestone/Firestone Research, Inc. v. Auto Club de L'Ouest de la France*, 245 F.3d 1359, 1364 (Fed. Cir. 2001) and rejecting the theory that a Plaintiff is entitled to delay bringing a trademark claim simply because the alleged harm is continuing).  In *S. Tex Neon Sign Co.*, the Court found that a seven-year delay in bringing trademark claims was unreasonable and inexcusable.  *Id.* at *37-38.  Despite Plaintiff having medical issues which caused the delay, the Court found laches barred the claim because "Plaintiff, a corporation, continued to run its business and to prosper during these seven years."  *Id.* at *37-38.

Moreover, ENS has been prejudiced by Cisco's delay in asserting any trademark rights.  ENS has invested substantial money into its business to grow and become, as Cisco acknowledges, one of the largest and "well-known resellers" of Cisco products on the secondary market.  In this case, Cisco's allegations acknowledge that it knew about ENS' business activities as early as 2008, yet it took no action to assert its trademark rights until November 14, 2019—more than eleven years later.  Documents which existed in 2008, and which could assist ENS in raising its defenses, may no longer exist.  Cisco does not justify its delay.  As such, Cisco's Sixth, Seventh, and Eighth Causes of Action should be dismissed; or, in the alternative, this Motion to Dismiss under Rule 12(b)(6) should be converted to the Rule 12(c) Motion for judgment in favor of ENS.

13

**F.  Plaintiffs Have Failed to State a Claim for Unjust Enrichment**

There is conflict among Texas courts as to whether unjust enrichment is an independent cause of action.  The Texas Supreme Court has held "a party may recover under the unjust enrichment theory when one person has obtained a benefit from another by fraud, duress, or the taking of an undue advantage."  *Heldenfels Bros., Inc. v. Corpus Christi*, 832 S.W.2d 39, 41 (Tex. 1992) (citing *Pope v. Garrett*, 147 Tex. 18, 211 S.W.2d 559, 560, 562 (Tex. 1948); *Austin v. Duval*, 735 S.W.2d 647, 649 (Tex. App. -- Austin 1987, writ denied.)  Other courts discuss that "unjust enrichment is not an independent cause of action but rather characterizes the result of a failure to make restitution of benefits under circumstances which give rise to an implied or quasi-contractual obligation to return the benefits."  *Amoco Prod. Co. v. Smith*, 946 S.W.2d 162, 164 (Tex.App.--El Paso 1997) (citing *City of Corpus Christi v. Heldenfels Bros., Inc.*, 802 S.W.2d 35, 40 (Tex.App.--Corpus Christi 1990), *affm'd*, 832 S.W.2d 39 (Tex. 1992)); *Friberg-Cooper Water Supply Corp. v. Elledge*, 197 S.W.3d 826, 832 (Tex. App.--Fort Worth 2006), rev'd on other grounds, 240 S.W.3d 869 (Tex. 2007) (Texas law does not provide for a cause of action for unjust enrichment).

What is clear is that unjust enrichment is a theory by which a Plaintiff must establish its entitlement to restitution under a quasi-contract relationship.  *See Hancock v. Chicago Title Ins. Co.*, 635 F. Supp. 2d 539 (N.D. Tex. 2009) (noting that the courts finding no independent cause of action have construed the Texas Supreme Court's language as "simply a reiteration of the well established principle that a suit for restitution may be raised against a party based on the theory of unjust enrichment") (quoting *Mowbray v. Avery*, 76 S.W.3d 663, 680 n.25 (Tex.App.--Corpus Christi).[5]  Here, Cisco has chosen to pursue damages in tort and has not alleged any facts giving rise to even a specter of a contractual or quasi-contractual agreement.  Cisco has alleged that

---

[5] California is in accord: As set forth by the Ninth Circuit, the quasi-contract remedy can be supported only in the following circumstances:

> Under an unjust enrichment theory, restitution may be awarded either (1) in lieu of breach of contract damages, where an asserted contract is found to be unenforceable or ineffective, or (2) where the defendant obtained a benefit from the plaintiff by fraud, duress, conversion, or similar conduct, but the plaintiff has chosen not to sue in tort.

*Rosal v. First Federal Bank of California*, 671 F.Supp.2d 1111, 1133 (N.D. Cal. 2009).

Ramey submitted requests to Cisco for discounted products under the allegedly fraudulent "Provident" name, but does not allege that ENS did so. Cisco does not explain how ENS' regular business dealings—which Cisco has known about for more than a decade—caused ENS to profit "by fraud, duress, or the taking of an undue advantage". *Heldenfels Bros.*, 832 S.W.2d 39, 41. Plaintiffs' claim for unjust enrichment should be dismissed.

### G. Plaintiffs Have Failed to State a Claim for Inducing Breach or Interference with Contract.

Plaintiffs' First Cause of Action is titled "Inducing Breach or Interference with Contract." The tort of "inducing breach of contract is but a specific application of the broad general principle that damage to another intentionally without justification or privilege is a tort." *Tippett v. Hart*, 497 S.W.2d 606, 611 (Tex. App.--Amarillo 1973) (citation omitted). The elements of a claim for tortious interference with contract are: (1) an existing contract subject to interference; (2) a willful and intentional act of interference with the contract; (3) that proximately caused the plaintiff's injury; and (4) caused actual damage or loss. *Prudential Ins. Co. of Am. v. Fin. Review Servs., Inc.*, 29 S.W.3d 74, 77 (Tex. 2000).

Further, to satisfy the "willful and intentional act of interference" element, a party must "knowingly induce one of the contracting parties to breach its obligations." *John Paul Mitchell Sys. v. Randalls Food Markets Inc.*, 17 S.W.3d 721, 730 (Tex. App.--Austin 2000) (citing *Browning–Ferris, Inc. v. Reyna*, 865 S.W.2d 925, 927 (Tex. 1993). The Plaintiff must also present evidence that a contract provision was actually breached. *Rimkis Consulting Grp., Inc. v. Cammarata*, 688 F. Supp. 2d 598, 675 (S.D. Tex. 2010) (citations omitted.) Finally, "[g]eneral claims of interference with a business relationship are insufficient to establish a tortious interference with contract claim." *Id.* (citing *Playboy Enters., Inc. v. Editorial Caballero, S.A. de C.V.*, 202 S.W.3d 250, 265 (Tex. App.—Corpus Christi 2006)).

First, under either cause of action, Cisco's Complaint fails to state a claim because Cisco has not alleged or identified, as it must, a valid contract between Cisco and a third party. Cisco's Complaint merely alleges, "Under the terms of Cisco's ICPA, Cisco's Authorized Resellers are

contractually required to sell Cisco products and service contracts only to End Users, and to purchase Cisco products and service contracts only from Cisco or an authorized source." Complaint, ¶ 129.  Cisco's allegation does not identify a specific contract between Cisco and another party that was breached or interfered with, which means this claim fails.  The closest Cisco comes to alleging "a valid contract" is its allegation that an ENS representative contacted a Cisco product re-seller High Availability, Inc.  *Id*.  However, this allegation does not identify or attach the contract between Cisco and High Availability, and fails to identify any specific or valid contract.  For this reason alone, Cisco's First Cause of Action must be dismissed.

Second, Cisco has failed to allege that ENS caused a third party to breach its contract with Cisco, or alternatively, that ENS disrupted Cisco's contractual relationship with a third party.  Cisco merely alleges ENS contacted High Availability and told them something.  Complaint, ¶ 129.  Even if true (which ENS' research has not confirmed), there is no allegation by Cisco that High Availability—or any other purported third party—breached a contract with Cisco as a result of ENS' alleged communication, or even that High Availability took any action as a result of the communication that could be considered a disruption of High Availability's purported obligations to Cisco.  Instead, it appears from the allegations that High Availability refused to do business with ENS, which is neither a breach nor a disruption in the High Availability business with Cisco.  As such, Cisco's First Cause of Action must be dismissed.

**H.  Plaintiffs Have Failed to State a Claim under California Unfair Competition Law**.

California's Unfair Competition Law is not a cause of action under Texas law.  Because Texas is the proper forum for this case, which was transferred to the Northern District of Texas pursuant to Section 1406(a), this claim should be dismissed because Plaintiffs cannot state a cognizable claim under Texas law.  However, even if the Court applies California law, Plaintiffs fail to state a claim under the California Unfair Competition law.

### 1.   Plaintiffs Have Failed to State Facts to Support a Claim under Any of the Three Prongs of California's Unfair Competition Law.

California's Unfair Competition Law prohibits "any unlawful, unfair or fraudulent business act or practice."   Cal. Bus. & Prof. Code § 17200; *Cel Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co*., 20 Cal.4th 163 (1999).   A "fraudulent" business practice under the UCL is a business practice where "consumers are likely to be deceived."   *Committee on Children's Television v. General Foods Corp*., 35 Cal.3d 197, 211 (1983).   "Unfair" conduct is defined as "conduct that threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or otherwise significantly threatens or harms competition."   *Cel Tech Commc'ns, Inc., supra,* 20 Cal.4th at 187.

Here, Cisco alleges that, "In pursuing the above-described schemes, Defendants have engaged in unfair, fraudulent, and unlawful business acts.  (Complaint, ¶ 191.)  Cisco further alleges, "Defendant ENS has engaged in unfair and unlawful business practices in selling counterfeit and otherwise infringing 'Cisco' products, and by causing confusion, mistake, and deception as to the origin and quality of the products they have sold in an effort to gain unfair competitive advantage and a windfall in the marketplace."  (*Id*.)

Cisco's UCL claim fails because to the extent this Court dismisses the claims asserted against ENS, there is no longer a predicate for Cisco's "unlawful" unfair competition claim.  As to Cisco's alleged "fraudulent" UCL claim, there are no such "fraud" allegations made against ENS.  Indeed, Cisco does not accuse ENS of committing acts of fraud.  In fact, Cisco's Complaint clearly indicates that ENS would present purchase orders to GDT/Ramey, and Ramey would communicate those purchase orders to Cisco.  Additionally, with respect to the "fraud" prong of the UCL, the Ninth Circuit has held the Lanham Act and California law of unfair competition "are substantially congruent" because the primary consideration in trademark-related unfair competition cases in California, as elsewhere, is the likelihood of confusion.  *International Order of Job's Daughters v. Lindeburg & Co.*, 633 F.2d 912, 916 (9th Cir. 1980); *Academy of Motion*

*Picture Arts & Sciences v. Creative House Promotions, Inc.*, 944 F.2d 1446, 1457 (9th Cir. 1991); see also *Ball v. American Trial Lawyers Ass'n*, 14 Cal.App.3d 289, 303 (1971). Thus, if the Court concludes Cisco has failed to state a claim under the Lanham Act, the "fraudulent" prong of Cisco's UCL claim must fail as well.[6]

### 2. Plaintiffs' UCL Claim Is Preempted by Federal Law.

To the extent Cisco's UCL claim is predicated on allegations relating to "selling counterfeit and others infringing 'Cisco' products," and "by causing confusion, mistake, and deception as to the origin and quality of the products they have sold" (Complaint, ¶¶ 191-192), those claims mirror the claims and allegations asserted in Cisco's Sixth, Seventh, and Eighth Cause of Action for Federal Trademark Infringement, Federal Trademark Counterfeiting, and Federal Unfair Competition. Thus, these claims are already being asserted as federal causes of action under federal trademark law and are preempted.

Preemption occurs when Congress so completely occupies a particular area that any civil complaint arising out of the area is necessarily federal in character. *Caterpillar, Inc. v. Williams,* 482 U.S. 386, 398 (1987); *Dukes v. U.S. Healthcare,* 57 F.3d 350, 354 (3d. Cir. 1995) (citing *Metropolitan Life Ins. Co. v. Taylor,* 481 U.S. 58, 63-64 (1987)); *Goepel v. National Postal Mail Handlers Union,* 36 F.3d 306, 309-313 (3d. Cir. 1994). The Lanham Act was intended to make "actionable the deceptive and misleading use of marks," and "to protect persons engaged in ... commerce against unfair competition." *Dastar Corp. v. Twentieth Century Fox Film Corp*., 539 U.S. 23, 28 (2003). Under the two-part preemption test, Cisco's UCL claim is preempted because: (1) Cisco's state law claim is the same 'subject matter' as its federal claims, and (2) the rights asserted in the UCL claim are equivalent to the rights contained in the Lanham Act claims.

---

[6] There are no other claims asserted that allege consumers would be deceived. Additionally, with respect to the "unfair" prong of Cisco's UCL claim, Cisco has not alleged any facts to support "conduct that threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law." As such, Cisco has not alleged facts to support a claim under the "unfair" prong of the UCL.

18

Emphasizing the duplicative nature of these claims, Cisco's UCL claim is based on the allegation that "[ENS is] causing confusion, mistake, and deception as to the origin and quality of the products they have sold," and Cisco's Sixth, Seventh, and Eighth federal trademark-related claims each allege, "ENS' conduct "is likely to cause confusion, to deceive, and to mislead the consuming public into believing that there is some affiliation, connection or association between ENS and Cisco."  *Compare*, Complaint ¶¶ 184-186 (Ninth Cause of Action for UCL) to ¶¶ 168-175 (Sixth Cause of Action), ¶¶ 178-181 (Seventh Cause of Action), ¶¶ 184-187 (Eighth Cause of Action).  All relief requested in the UCL claim is already covered by the relief that could be granted under Cisco's federal trademark claims in the Sixth, Seventh and Eighth Causes of Action.  For this reason, the Ninth Cause of Action should be dismissed as to ENS.

## VII.  CONCLUSION

For the foregoing reasons, Defendant respectfully requests that the Court dismiss Plaintiffs' claims in their entirety with prejudice.

Dated: September 11, 2020                    Respectfully submitted,

*/s/* Carl E. Roberts_____
Carl E. Roberts
Tx. Bar No. 16999000
8150 N. Central, Suite 1000
Dallas, TX 75206
Telephone: 214-750-3350
Facsimile: 214-367-6001
E-mail: CRoberts@rcsllp.com

Douglas A. Pettit, Esq., SBN 160371
Caitlin M. Jones, Esq., SBN 321206
Pettit Kohn Ingrassia Lutz & Dolin PC
11622 El Camino Real, Suite 300
San Diego, CA 92130
Telephone: (858) 755-8500
Facsimile:  (858) 755-8504
E-mail:    dpettit@pettitkohn.com
              cjones@pettitkohn.com
Attorneys for Defendant
MUSHKIN, INC. (d/b/a ENHANCED
NETWORK SYSTEMS)

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served by electronic mail delivery through the ECF-Pacer electronic filing system on 11th day of September, 2020.

_/s/_ Carl E. Roberts_____
Carl E. Roberts