IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| CISCO SYSTEMS, INC., a California corporation; CISCO TECHNOLOGY, INC., a California corporation, | § § § § | |
| Plaintiffs, | § § | |
| v. | § § | Civil Action No. 3:20-CV-2588-K |
| MUSHKIN, INC., a Colorado Corporation (d/b/a ENHANCED NETWORK SYSTEMS); JEFFREY RAMEY, an individual; DOES 1-10, | § § § § § | |
| Defendants. | § § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendants Cisco Systems, Inc. and Cisco Technology Inc.'s Motion to Dismiss Defendant Jeffery Ramey's Amended Counterclaims and Brief in Support (Doc. Nos. 92 & 92-1) (the "Motion"). After careful consideration of the Motion, responsive briefing, relevant portions of the record, and applicable law. The Court **GRANTS in part and DENIES in part** the Motion pursuant to Federal Rule of Civil Procedure 12(b)(6). Specifically, the Court **denies** the Motion as to Ramey's counterclaims for defamation, business disparagement, tortious interference with prospective relations, and tortious interference with contract. The Court **grants** the Motion to dismiss the intentional infliction of emotional distress counterclaim and **dismisses** that counterclaim. Because Ramey states his intent to abandon his unfair

1

competition counterclaim, the Court **dismisses the unfair competition counterclaim** to avoid Ramey needing to amend the pleadings again.

## I.    Factual and Procedural Background

This case arises from an alleged fraudulent scheme purportedly orchestrated by Defendant Jeffrey Ramey ("Ramey"), a former Senior Account Manager at Cisco Authorized Reseller, General Data Tech ("GDT"), and Mushkin, Inc., d/b/a Enhanced Network Systems, ("ENS"), an unauthorized reseller of Cisco products. Cisco Systems, Inc. and Cisco Technology Inc. (collectively, "Cisco") allege that Ramey and ENS defrauded Cisco by obtain discounts on Cisco products based on false and misleading information to secure lower prices on products than ENS could otherwise obtain.

Ramey formerly worked for GDT, which is a large IT networking solutions provider that has a business relationship with Cisco. Cisco investigated Ramey and ENS's alleged scheme, which in Ramey's view was a "campaign of derogatory, defamatory, and disparaging action aimed at damaging Ramey's reputation and ending his 22-year successful career in the IT industry." Resp., Doc. No. 104, at 2. Ramey claims Cisco's investigation of the purported fraudulent scheme led to Cisco supposedly convince GDT to fire Ramey. Ramey alleges that Cisco then spread untruths regarding his involvement in the fraudulent scheme to Ramey's business contacts, which resulted in Ramey losing long-time and pending contracts. Ramey seeks relief for the alleged wrongs that Cisco committed against him through their investigation and related actions adverse to Ramey.

In terms of procedural background, Cisco filed its Complaint (Doc. No. 1) concerning the alleged fraudulent scheme on November 14, 2019, in the Northern District of California. In lieu of answering, Ramey filed his Motion to Dismiss Pursuant to Federal Rules 12(b)(2) and 12(b)(3) or, in the Alternative, Request for Transfer (Doc. No. 23). The request for transfer was granted, and the case was transferred to this Court. Ramey then filed his answer and counterclaims on September 11, 2020 (Doc. No. 74).

Cisco filed its First Amended Complaint (Doc. No. 85) concerning the alleged fraudulent scheme on October 2, 2020, alleging ten claims against Ramey and ENS: (1) Inducing Breach and Interfering with Contract; (2) Fraud; (3) Aiding and Abetting Fraud; (4) Conspiracy; (5) Negligent Misrepresentation; (6) Trademark Infringement; (7) Trademark Counterfeiting; (8) Federal Unfair Competition; (9) Texas Unfair Competition; and (10) Unjust Enrichment.

Ramey filed his Answer (Doc. No. 89) to the First Amended Complaint and six Amended Counterclaims (Doc. No. 87) on October 12, 2020. Ramey's Amended Counterclaims include: (1) Defamation; (2) Business Disparagement; (3) Tortious Interference with Prospective Business Relations; (4) Tortious Interference with Contract; (5) Unfair Competition; and (6) Intentional Infliction of Emotional Distress. In sum, Ramey alleges that Cisco engaged in a campaign of false information in which Cisco allegedly intended to destroy Ramey's business relationships by defaming him in making statements related to Cisco's investigation of Ramey's purportedly fraudulent

3

activity. In this Motion, Cisco moved to dismiss all claims against it pursuant to Federal Rule of Civil Procedure 12(b)(6). Having received all responsive briefing, the Motion is ripe for the Court's review and determination as follows.

## II.     Legal Standard

In considering a Rule 12(b)(6) motion, a court must determine whether the plaintiff sufficiently stated a claim upon which relief may be granted. FED. R. CIV. P. 12(b)(6). A well-pleaded complaint must allege facts upon which the claims are based and not be a conclusory recitation of the elements of a cause of action. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A complaint must state sufficient facts such that the "claim has facial plausibility" and is not merely "possible." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A plaintiff pleads a claim with facial plausibility when the "factual content . . . allows the court to draw the reasonable inference that the defendant is liable." *Id.* This pleading standard does not require "'detailed factual allegations,' but it demands more than an unadorned [] accusation . . . that is devoid of 'further factual'" support. *Iqbal*, 556 U.S. at 662 (quoting *Twombly*, 550 U.S. at 555). The complaint must allege sufficient facts to "give the defendant fair notice" of plaintiff's claims against the defendant. *Twombly*, 550 U.S. at 555 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

The Court "accept[s] all well-pleaded facts as true and view[s] those facts in the light most favorable to the plaintiff." *Stokes v. Gann*, 498 F.3d 483, 484 (5th Cir. 2007) (per curiam). The Court "do[es] not accept as true conclusory allegations,

unwarranted factual inferences, or legal conclusions." *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007) (quoting *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005)).

The sufficiency of a plaintiff's pleading under Rule 8 may also be challenged pursuant to a Rule 12(b)(6) motion to dismiss for failure to state a claim. *See Bank of Abbeville & Trust Co. v. Commonwealth Land Title Ins. Co.,* No. 05-30976, 2006 WL 2870972, at *2 (5th Cir. Oct. 9, 2006) (citing Wright & Miller, *supra*, § 1203 (3d ed. 2004) ("[T]he form and sufficiency of a statement of a claim for relief under Rule 8(a)(2) may be tested by a motion to dismiss for failure to state a claim upon which relief can be granted, Rule 12(b)(6) . . . .")). Federal Rules of Civil Procedure 8(a)(2) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). To satisfy Rule 8(a)(2)'s requirement, "[s]pecific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam) (quoting *Twombly*, 550 U.S. at 555).

## III. Analysis

Cisco moved to dismiss all of Ramey's counterclaims on various bases. In accordance with the following, the Court concludes that the Motion should be **granted in part and denied in part**. Specifically, the Court **denies** the Motion as to Ramey's counterclaims for defamation, business disparagement, tortious interference with

5

prospective relations, and tortious interference with contract. The Court **grants** the Motion to dismiss the intentional infliction of emotional distress counterclaim and dismisses that counterclaim for the reason explained below. As explained below, Ramey states his intent to abandon his unfair competition counterclaim. To avoid Ramey needing to amend the pleadings again, the Court dismisses the unfair competition counterclaim.

## A. Defamation Counterclaim

### a. Statute of Limitations Issue

Cisco contends that Ramey's defamation counterclaim is barred by the one-year statute of limitation. In Texas, a claim for defamation must be brought "no later than one year after the day the cause of action accrues." Tex. Civ. PRAC. & REM. CODE § 16.002(a). Cisco points out that the allegedly defamatory statements Ramey identifies in Paragraph 18 of the Amended Counterclaims purportedly happened between November 2018 and March 2019. *See* Am. Counterclaims, Doc. No. 87, at ¶ 18. In Cisco's view, this would mean that Ramey's original defamation counterclaim, filed on September 11, 2020, is barred.

In Ramey's response, he argues that the defamation claim is not untimely or barred by the one-year statute of limitations because the defamation claim is a compulsory counterclaim and therefore relates back to date of the filing of Cisco's initial complaint.

In the Fifth Circuit, the statute of limitations for compulsory counterclaims is tolled from the time the plaintiff files the initial complaint, and the counterclaim relates back to the date the initial complaint was field. *Songcharoen v. Plastic & Hand Surgery Assocs., P.L.L.C.*, 561 F. App'x. 327, 240-41 (5th Cir. 2014). To determine whether a claim is compulsory, the Fifth Circuit states that courts should ask:

> (1) whether the issues of fact and law raised by the claim and counterclaim largely are the same; (2) whether res judicata would bar a subsequent suit on defendant's claim absent the compulsory counterclaim rule; (3) whether substantially the same evidence will support or refute plaintiff's claim as well as the defendant's counterclaim; and (4) whether there is any logical relationship between the claim and the counterclaim. An affirmative answer to any of the four questions indicates the claim is compulsory.

> *Park Club, Inc. v. Resolution Tr. Corp.*, 967 F.2d 1053, 1058 (5th Cir. 1992)

(citation omitted).  If any of the four questions results in an affirmative answer, the counterclaim is compulsory. *Id.*

The Court finds that factors are answered affirmatively here. There is a logical relationship between the alleged defamation and Cisco's First Amended Complaint. Just as Ramey explains, because the defamation claim depends on him disproving Cisco's fraud claim against him, resolution of both parties' claims hinge on the same issues, and therefore the claims are logically related.  In addition, the issues of fact and law raised by both parties' claims revolve around whether or not Ramey is liable for the alleged fraudulent scheme and whether or not Cisco's purportedly defamatory statements were true. As such, Ramey's defamation counterclaim is compulsory.

Because the defamation counterclaim is compulsory, the statute of limitations was tolled from the date the Cisco filed the initial complaint on November 14, 2019.

In opposition to Ramey, Cisco contends that the defamation counterclaim is permissive. Cisco cites to a case law outside of this circuit to support its position. While the Court acknowledges that case law in other circuits may support a different conclusion, the Court must follow the case law within this circuit. With very little case law on this exact issue, the Court will address three cases from this circuit that speak to the issue of compulsory versus permissive counterclaims in the defamation context: (1) the Fifth Circuit's decision in *Underwriters at Int. on Cover Note JHB92M10582079 v. Nautronix, Ltd.* ("*Nautronix*"), (2) the Western District of Texas's decision *50-Off Stores, Inc. v. Banque Paribas (Suisse) S.A.* ("*50-Off Stores*"), and (3) *Trugreen Ltd. P'ship v. Rogers* ("*Trugreen*").

In *Nautronix*, a plaintiff vessel owner hired the defendant to install a drilling-related device on the vessel. *Underwriters at Int. on Cover Note JHB92M10582079 v. Nautronix, Ltd.*, 79 F.3d 480, 483 n.2 (5th Cir. 1996). Something allegedly went wrong with the device, causing great damage to plaintiff's drilling equipment and operations. *Id.* The plaintiff sued for negligence and related claims. *Id.* Defendant brought counterclaims for slander and commercial disparagement, alleging that the plaintiff defamed and disparaged the defendant regarding fault for the damage and the quality and reliability of its products to customers, competitors, and potential customers. *Id.* The procedural issues at hand in *Nautronix* are irrelevant here, but the Fifth Circuit's

8

analysis of whether the defendant's counterclaim was compulsory is telling for Ramey's counterclaim before this Court. While the Fifth Circuit only cited this conclusion in a footnote to the decision, it is highly persuasive to this Court, as it also was to the court in *50-Off Stores*. The Fifth Circuit stated, "We have no difficulty concluding that Nautronix's counterclaims, including slander and commercial disparagement, satisfy the third and fourth tests cited above. Therefore, these claims were compulsory and Nautronix was required to bring them once they had been sued . . . ." *Id.* at 485, n.2. The Court invokes the same reasoning for its decision here because the defamation counterclaim concerns purported statements made to Ramey's business contacts about his alleged involvement in a fraudulent scheme that is the very basis of Cisco's complaint.

Following the Fifth Circuit, the Western District of Texas ruled on similar issues in *50-Off Stores*. There, the court held that a defendant's defamation counterclaim was compulsory because the same evidence would support or refute plaintiff's claims and defendant's counterclaims for defamation and business disparagement. *50-Off Stores, Inc. v. Banque Paribas (Suisse) S.A.*, No. SA-95-CA-159, 1997 WL 790739, at *1 (W.D. Tex. May 20, 1997). In *50-Off Stores*, the plaintiff brought claims against the defendant bank alleging its was involved in a fraudulent banking scheme. *Id.* at *1. The defendant brought defamation, slander, libel, and business disparagement counterclaims against the plaintiff and its counsel for allegedly defamatory statements published in a local newspaper accusing the defendant of "break[ing] the law" by participating in an

international scam of banks to steal millions from the plaintiff. *Id.* The plaintiff, like Cisco, argued that the counterclaims were permissive. *Id.* The court, however, sided with the Fifth Circuit's analysis in *Nautronix* and found that the same evidence would support or refute the plaintiff's claims and defendant's counterclaims of defamation and business disparagement. *Id.* at *3. The court further found that there existed a logical relationship between the claims and counterclaims, and therefore the counterclaims for defamation and business disparagement are compulsory. *Id.*

Notably, *Trugreen* is a case from the Northern District of Texas in which the Court found that a defamation counterclaim was permissive because it presented different legal and factual issues from the principal suit. *Trugreen Ltd. P'ship v. Rogers*, No. 3:97-CV-0606-H, 1998 WL 136585, at *3 (N.D. Tex. Mar. 18, 1998) (Sanders, S.J.). *Trugreen*, however, is undoubtedly distinguishable from the case before this Court. The plaintiff pest control company in *Trugreen* sued defendants, a former employee and a competitor, alleging misconduct in connection with defendant competitor's acquisition of three companies that plaintiff had already targeted. *Id.* at *3. The defendants brought counterclaims related to events that took place while defendant competitor was in negotiations with a fourth company to acquire. *Id.* The defendant competitor alleged that the plaintiff's agent made false statements to the fourth company about defendants, which resulted in defendant competitor losing the deal. *Id.* The plaintiff contended that the slander and business disparagement counterclaims are permissive because they do not arise out of the same transaction or occurrences that

10

are subject matter of the plaintiff's principal claims.  *Id.* The court was unpersuaded that the counterclaims arose out of the same transaction or occurrence because plaintiff's claims involved a conspiracy between defendant former employee and defendant competitor to steal trade secrets and usurp plaintiff's acquisition opportunities, while the slander-based allegations are separate and distinct and occurred around four months after the initial lawsuit. *Id.*

Here, Ramey alleges that the defamatory statements concerned the purported fraudulent scheme that is the basis of Cisco's complaint against Ramey, and Ramey also alleges that the statements happened around the same time as the investigation, though before Cisco filed the initial complaint. The present circumstances are much different than those in *Trugreen*, where the slander counterclaim was unrelated to the complaint. The Court finds *Trugreen* distinguishable and instead follows *Nautronix* and *50-Off Stores*. Because Ramey's counterclaims concern the same issue of the veracity of whether Ramey was actually involved in the fraudulent scheme, the Court concludes that Ramey's counterclaim for defamation is compulsory. Because the Court finds that the defamation counterclaim is compulsory, the Court also concludes that the date to timely file the defamation counterclaim was tolled and relates back to Cisco's initial complaint filing date. Therefore, Ramey's defamation counterclaim is not barred by the statute of limitations.

### b. Pleading the Defamation Claim with Sufficient Specificity

Cisco contends that Ramey's defamation claim fails because Ramey does not plead his claim with sufficient factual specificity. "To state a claim for defamation of a non-public figure under Texas law, a plaintiff must demonstrate that the defendant published a defamatory statement about him while acting with negligence regarding the truth of the statement." *Ameen v. Merck & Co.*, 226 F. App'x 363, 370 (5th Cir. 2007). In the pleading, "the plaintiff must identify the alleged defamatory statement and the speaker." *Id.* The claim must also "state the time and place of the publication." *Jackson v. Dallas Indep. Sch. Dist.*, 1998 WL 386158, *5 (N.D. Tex. July 2, 1998), *aff'd*, 232 F.3d 210 (5th Cir. 2000). "Courts require more particular pleading [for a defamation claim] to allow the opposing party to raise the appropriate defenses." *Id.* (requiring a plaintiff specify the time, place, content, speaker, and listener).

Cisco argues that Ramey fails to sufficiently plead the speakers, listeners, and place of the alleged defamatory statements. Cisco posits that Ramey's counterclaim fails to provide sufficient allegations regarding who exactly made the allegedly defamatory statements and to whom the statements were made, despite the fact that Ramey heard the statements from the "receiving parties". Ramey rebuts that he identified the speakers ("Douglass Abbott and other members of 'Cisco's Brand Protection' division") and the specific entity listeners (City of Richardson, City of North Richland Hills, U.S. Net, Arcosa, and Datavox). Cisco concedes that Ramey does allege that Abbott and other members of the Brand Protection division made these

statements; however, Cisco essentially says alleged statements need to be attributed to a specific person and that, as is, Ramey's identification of speakers is too vague. The Court disagrees and concludes that requiring such a heightened pleading standard is unnecessary under these circumstances. The Court finds that identifying Douglass Abbott and other members of his division as the speakers is sufficient to satisfy Federal Rule of Civil Procedure 8. "Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Twombly,* 550 U.S. at 554-55 (citing FED. R. CIV. P. 8).

Cisco also argues that Ramey must do more than just identify the specific entities to whom the alleged defamatory statements were made. Cisco wants the Court to require Ramey to state the name of the listener within each specific entity. Ramey rebuts that identifying City of Richardson, City of North Richland Hills, U.S. Net, Arcosa, and Datavox, and the specific statements said to each entity, is sufficient under Rule 8. The Court agrees. Ramey points to *Redden v. Smith & Nephew Inc.* to support his contention that he sufficiently pleaded his claim. In *Redden*, the court dismissed the plaintiff's defamation claim because the "sweeping generalizations" that the defendant "agents" and "sales representatives" communicated "false rumors" to "client-physicians" and the "orthopedic community" revealed nothing, and only intimate a "sheer possibility" of wrongdoing. *Redden v. Smith & Nephew, Inc.*, No. 3:09-CV-1380-L, 2010 WL 2944598, at *5 (N.D. Tex. July 26, 2010) (Lindsay, J.). Ramey argues

13

that he alleged more facts than the plaintiff in *Redden* by identifying the specific statements, the timeframe, the specific entity listeners, and Douglas Abbott and members of the Brand Protection team as speakers. The Court concludes that Ramey's allegations far surpass "sweeping generalizations" and his identification of the specific entity listeners is much more specific than the "client-physicians" and "orthopedic community" that failed to satisfy Rule 8 in *Redden*.

In contrast to *Redden*, the court in *Accresa Health LLC v. Hint Health Inc.* held the exact opposite as the *Redden* court and found that "[a]lthough the counterclaim [did] not allege specifically the clients, referral sources, and prospective business relationships, it [did] allege generally to whom the allegedly defamatory statements were made [and] . . . [gave] a short and plain statement of the claims presented for relief in accordance with the Federal Rule of Civil Procedure 8(a)." *Accresa Health LLC v. Hint Health Inc.*, No. 4:18-CV-00536, 2020 WL 4644459, at *30 (E.D. Tex. Mar. 19, 2020), *report and recommendation adopted,* No. 4:18-CV-00536, 2020 WL 2610908 (E.D. Tex. May 22, 2020). Therefore, the Court concludes that Ramey's identification of the specific entity listeners is sufficient to state a claim for defamation under Rule 8 and requiring a heightened pleading would be improper at this stage.

This Court, like others, has been unable to locate case law requiring a plaintiff to specify the exact time and place of publication as required elements of a defamation claim. *See e.g., Smith v. Shred-It USA*, No. 3:10-CV-831-O-BK, 2010 WL 3733902, at *1 (N.D. Tex. Sept. 23, 2010) (O'Connor, J.). When considering the pleadings as a

14

whole and taking the factual allegations as true, the Court concludes that under the notice pleading standards of Rule 8, Ramey's defamation claim is sufficiently specific. The Court declines to raise the threshold and require that Ramey replead the defamation counterclaim because he already sufficiently pleaded this counterclaim. Therefore, the Court **denies** the Motion to dismiss the defamation counterclaim on the basis that is not sufficiently pleaded.

On a separate but related note, Cisco argues that the alleged defamatory statements made by Paul Sorensen should be dismissed because Paul Sorensen is not an individual at Cisco, but rather is someone who works for one of Cisco's partners. Given that Ramey's pleadings state that Paul Sorensen does not work for Cisco, and that Ramey failed to address this argument in its Response, the Court **grants** the Motion to dismiss the defamation claim to the extent its is based on statements attributed to Paul Sorensen and not Cisco.

### c. Pleading Negligence or Actual Malice

Cisco contends that Ramey's defamation counterclaim should be dismissed because he fails to sufficiently plead negligence or actual malice. Under Texas law, Ramey must show Cisco: "(1) published a statement, (2) that was defamatory as to [Ramey], (3) 'while acting with either actual malice, if the plaintiff was a public official or public figure, or negligence, if the plaintiff was a private individual, regarding the truth of the statement.'" *Hill v. Anderson*, 420 F. App'x 427, 434 (5th Cir. 2011) (quoting *WFAA–TV, Inc. v. McLemore*, 978 S.W.2d 568, 571 (Tex. 1998)).

15

Assuming the negligent standard applies, Ramey must allege that Cisco knew or should have known the defamatory statement was false, and the content of the publication would warn a reasonably prudent person of its defamatory potential. *See Foster v. Laredo Newspapers, Inc.*, 541 S.W.2d 809, 819-20 (Tex. 1976). The Court finds that Ramey has sufficiently alleged negligence. Cisco's arguments are more properly raised at the summary judgment stage. It would be improper at this juncture for the Court to resolve or comment on a factual dispute as to whether Cisco's conduct was negligent.

Assuming the actual malice standard applies, Ramey would have to allege that Cisco knew its statements were false or made them with reckless disregard for their truth. *See Huckabee v. Time Warner Entm't Co.*, 19 S.W.3d 413, 420 (Tex. 2000) ("[T]o establish actual malice, a plaintiff must prove that the defendant made the statement 'with knowledge that it was false or with reckless disregard of whether it was true or not.'" (citing *New York Times Co. v. Sullivan*, 376 U.S. 254, 279-80 (1964))). While Ramey concedes in his Amended Counterclaims that he "does not yet know whether Cisco knew the statements made to these companies were false," Ramey does allege that even if Cisco did not affirmatively know the statements were false, Cisco still acted "out of malice, or with reckless disregard for the truth, or at minimum, acted negligently" and "should have known that the statements were false, and the content of the statements made would want a reasonably prudent person of their defamatory potential." Am. Counterclaims at ¶¶ 22-23, 31.

16

At this time, the Court cannot and will not resolve the factual dispute as to whether negligence or actual malice was committed. Nonetheless, the Court is satisfied that Ramey has sufficiently pleaded this element regardless of which standard applies and therefore **denies** the Motion to dismiss the defamation counterclaim on such grounds.

### d. Compliance with the Defamation Mitigation Act

Cisco argues that Ramey's defamation claim is barred by the Defamation Mitigation Act ("DMA") because Ramey fails to plead that he made a request for correction, clarification, or retraction of Cisco's alleged defamatory statements within one year of the statements' occurrence. *See* TEX. CIV. PRAC. & REM. CODE § 73.055. The DMA requires that "[a] person may maintain an action for defamation only if: (1) the person has made a timely and sufficient request for a correction, clarification, or retraction from the defendant; or (2) the defendant has made a correction, clarification, or retraction." *Id.*

Texas appellate courts are split on whether failure to comply with the DMA requires dismissal of a claim, and the Texas Supreme Court has not directly addressed the issue. In light of this, the Court will follow *Inge v. Walker*, a case out of the Northern District of Texas discussing this issue. *See Inge v. Walker*, No. 3:16-CV-0042-B, 2017 WL 4838981, at *3 (N.D. Tex. Oct. 26, 2017) (Boyle, J.). In *Inge*, Judge Boyle explained that the plaintiff's "failure to follow § 73.055(a)(1) does not require dismissal for failure to state a claim." *Id.* at *3 (citing *Hardy v. Commc'n Workers of Am. Loc. 6215*

17

*AFL-CIO*, 536 S.W.3d 38 (Tex. App. 2017)). Judge Boyle ultimately held that "[a]llowing for dismissal under the DMA would read an additional remedy into the statute." *Id.* The Court declines to dismiss Ramey's defamation counterclaim under Rule 12(b)(6) for his failure to follow § 73.055(a)(1).

### e. Litigation Privilege Issue

Cisco contends that Ramey's defamation counterclaim is subject to dismissal because the purported defamatory statements are protected by the litigation privilege. Ramey rebuts that the defense of litigation privilege is an affirmative defense that cannot be decided on a 12(b)(6) motion, given that the alleged statements occurred before Cisco filed its initial complaint against Ramey.

According to Texas case law, "[c]ommunications in the due course of a judicial proceeding will not serve as the basis of a civil action for libel or slander, regardless of the negligence or malice with which they are made." *James v. Brown*, 637 S.W.2d 914, 916 (Tex. 1982) (per curiam). "This privilege extends to any statement made by the judge, jurors, counsel, *parties* or witnesses, and attaches to all aspects of the proceedings, including statements made in open court, pre-trial hearings, depositions, affidavits and any of the pleadings or other papers in the case." *Id.* at 916-17 (emphasis added). Texas courts have even stretched the privilege to communications made in contemplation of and preliminary to judicial proceedings. *See, e.g., Russell v. Clark*, 620 S.W.2d 865, 868 (Tex. Civ. App.—Dallas 1981, writ ref'd n.r.e.); *see also James*, 637 S.W.2d at 916.

18

There are some limitations to the privilege for pre-litigation statements. For instances, the Texas Supreme Court explained in *Shell Oil* that:

> The test for whether a communication is absolutely privileged when it occurs before judicial proceedings have begun entails both subjective and objective components. *See* RESTATEMENT (SECOND) OF TORTS § 588 cmt. e (1977) ("As to communications preliminary to a proposed judicial proceeding the rule . . . applies only when the communication has *some relation* to a proceeding that is *actually contemplated* in good faith and *under serious consideration* by the witness or a possible party to the proceeding.") (emphasis added). The fact that a formal proceeding does not eventually occur will not cause a communication to lose its absolutely privileged status; however, it remains that the possibility of a proceeding must have been a serious consideration at the time the communication was made. *See id.* ("The bare possibility that the proceeding might be instituted is not to be used as a cloak to provide immunity for defamation when the possibility is not seriously considered."); *see also United States v. Baggot*, 463 U.S. 476, 484, 103 S.Ct. 3164, 77 L.Ed.2d 785 (1983) [(Burger, J., dissenting)] ("The words *preliminary to*" necessarily refer to judicial proceedings not yet in existence, where, for example, a claim is under study.").

*Shell Oil Co. v. Writt*, 464 S.W.3d 650, 655 (Tex. 2015) (emphasis in original).

"The bare possibility that the proceeding might be instituted is not to be used as a cloak to provide immunity for defamation when the possibility is not seriously considered." *Shell Oil,* 464 S.W.3d at 655. On the other end of the spectrum, Texas courts have cautioned that "[t]he privilege . . . cannot be enlarged into a license to go about in the community and make false and slanderous charges against his court adversary and escape liability for damages caused by such charges on the ground that he had made similar charges in his court pleadings." *De Mankowski v. Ship Channel Dev. Co.*, 300 S.W. 118, 122 (Tex. Civ. App.—Galveston 1927, no writ).

"'Although dismissal under Rule 12(b)(6) is ordinarily determined by whether the facts alleged in the complaint, if true, give rise to a cause of action, a claim may also be dismissed if a successful affirmative defense appears clearly on the face of the pleadings.'" *TIB--The Indep. BankersBank v. Canyon Cmty. Bank*, 13 F. Supp. 3d 661, 666 (N.D. Tex. 2014) (Fitzwater, C.J.) (quoting *Clark v. Amoco Prod. Co.*, 794 F.2d 967, 970 (5th Cir. 1986)). "In the usual case, this court is unable to grant dismissal under Rule 12(b)(6) based on an affirmative defense because it rarely appears on the face of the complaint." *Id.* (citations omitted). "It is well settled . . . that in order for a defendant to prevail on the basis of limitations at the pleadings stage, the plaintiff must normally plead [it]self out of court." *Id.* (citations omitted).

In light of foregoing precedent, the Court evaluates whether, at this stage in the case, a successful affirmative defense for privilege appears clearly on the face of the pleadings. That is—whether Cisco contemplated litigation in good faith at the time of the communication and whether the statement had "some relation" to that contemplated proceeding. At this juncture, the Court cannot conclude that the privilege appears clearly on the fact of the pleadings. As such, the Court, at this time, **denies without prejudice** the Motion to dismiss the defamation claim on the basis that the alleged defamatory statements were privileged. The Court finds that information beyond the pleadings is necessary to make such determination and therefore declines to rule on the issue prematurely.

### f.  Non-Actionable Opinions Issue

Cisco also argues that some of the alleged defamatory statements are non-actionable opinions. A defamation claim is actionable if it is an assertion of fact and objectively verifiable. *See Dallas Morning News, Inc. v. Tatum*, 554 S.W.3d 614, 639 (Tex. 2018). "If a statement is not verifiable as false, it is not defamatory." *Id.* at 624 (citation omitted). "[S]tatements that cannot be verified, as well as statements that cannot be understood to convey a verifiable fact, are opinions." *Id.* at 639.

Ramey rebuts that his defamation claim is based on Cisco's statement to several entities that Ramey defrauded Cisco, which is a direct assertion of a verifiable fact. Resp. at 17. Ramey concedes that he "may have included other statements by Cisco in its [sic] recitation of the facts does not diminish the validity of Ramey's defamation claim." *Id.* The statements regarding whether the entities should continue working with Ramey are mere surplusage. Because the Court finds that Ramey alleges that actionable defamatory statements were spoken, the Court will ignore the extraneous opinion statements that were included to add context to the purportedly slanderous conversations.

## B.  Business Disparagement Counterclaim

Cisco argues that Ramey's business disparagement claim should be dismissed because Ramey fails to allege lack of privilege, fails to adequately allege malice, bases his counterclaim on purported statements that are protected by the litigation privilege or non-actionable, and fails to plead special damages with any specificity.

"The elements of a claim for business disparagement are publication by the defendant of the disparaging words, falsity, malice, lack of privilege and special damages." *Johnson v. Hosp. Corp. of Am.*, 95 F.3d 383, 391 (5th Cir. 1996) (citing *Hurlbut v. Gulf Atlantic Life Ins.*, 749 S.W.2d 762, 767 (Tex. 1987)). "To prove special damages, a plaintiff must provide evidence of direct, pecuniary loss attributable to the false communications of the defendants." *Id.* (citing *Hurlburt Gulf Atl. Life Ins. Co.*, 749 S.W.2d 762, 767 (Tex. 1987) (rejecting a claim for business disparagement where "[o]ur examination of the record reveals no evidence of the direct, pecuniary loss necessary to satisfy the special damages element of a claim for business disparagement")).

Preliminarily, the Court notes that with respect to Cisco's contentions that Ramey's business disparagement claim fails because he does not adequately allege malice and bases his claim on purported statements that are protected by the litigation privilege or are non-actionable opinions, the Court's ruling is the same as its ruling above on these issues for the defamation counterclaim.

### a. "Lack of Privilege" Issue

Cisco posits that Ramey's business disparagement claim fails because Ramey did not allege lack of privilege, which Cisco claims is Ramey's burden to plead. Cisco further contends that its arguments concerning privilege for the defamatory statements also apply for Ramey's business disparagement claim.

22

In opposition, Ramey argues that although "lack of privilege" is listed as an element of a Texas business disparagement claim, this element is treated as an affirmative defense, rather than an actual element of the plaintiff's proof. The Court agrees with Ramey on this point. While the Texas Supreme Court has listed "lack of privilege" as an element, which would typically suggest that the plaintiff bears the burden to negate privilege, the element is not discussed in Texas case law as being the plaintiff's burden. Instead, limitations such as absolute privilege and qualified privilege have been raised and successfully litigated as an affirmative defense to business disparagement. *Daystar Residential, Inc. v. Collmer*, 176 S.W.3d 24, 28–29 (Tex. App.— Houston [1st Dist.] 2004, pet. denied) (absolute privilege); *Burbage v. Burbage*, 447 S.W.3d 249, 254 (Tex. 2014) (qualified privilege). In addition, the Restatement Second of Torts § 651(2) supports the idea that privilege is a defense to a business disparagement claim, not an element of the claim. In light of what exist in Texas case law on this issue, the Court considers privilege to be an affirmative defense to Ramey's business disparagement claim, and so Ramey does not have the burden of pleading "lack of privilege".

As previously discussed, a claim may be dismissed at the Rule 12(b)(6) stage "if a successful affirmative defense appears clearly on the face of the pleadings." *Clark*, 794 F.2d at 970. Like the Court already explained, the Court does not find that it is clear on the face of Ramey's pleadings that the privilege applies. In addition, the Court does not find that the qualified privilege is clear from the face of the pleadings either.

Therefore, the Court **denies** the Motion to dismiss the business disparagement claim on the grounds that Ramey failed to allege "lack of privilege" and that it is clear on the face of the pleadings that the alleged statements fall under a privilege doctrine.

### b.  Special Damages Issue

Next, the Court turns to the issue of special damages. Cisco argues that Ramey's business disparagement counterclaim fails because Ramey inadequately alleges special damages by making a conclusory, one-sentence allegation that "[s]uch disparagement caused special damages to [Ramey] . . . ." Am. Counterclaims at ¶ 33. Cisco contends that this allegation, without more, is insufficient to meet the pleading standard and therefore the claim should be dismissed. In addition, Cisco posits that "to the extent Ramey intends to point to any specific damages alleged in his defamation claim, his business disparagement claim would then suffer from a failure to provide any meaningful basis upon which to distinguish it from the defamation claim, making it duplicative and subject to dismissal." Mot. at 19. Cisco makes no further argument with respect to Ramey's special damages allegations. In response, Ramey argues that he has sufficiently pleaded special damages by alleging economic harm in Paragraph 18 of the Amended Counterclaims. Resp. at 21-22; *see also* Am. Counterclaims at ¶ 18.

According the Texas Supreme Court, special damages include "pecuniary loss that has been realized or liquidated as in the case of specific lost sales." *Hurlburt*, 749 S.W.2d at 767 (citing W. Page Keeton et al., *Prosser and Keeton on the Law of Torts*, § 128, at 971 (5th ed. 1984)). "[T]he communication must play a substantial part in

inducing others not to deal with the plaintiff with the result that special damage, in the form of the loss of trade or other dealings, is established." *Id.* "[T]o assert separate and distinct claims for defamation and business disparagement, a plaintiff must allege economic harm beyond the defamatory injury to the plaintiff's reputation, such as specific lost sales." *Nationwide Bi-Wkly. Admin., Inc. v. Belo Corp.*, No. 3:06-CV-0600-N, 2006 WL 8436934, at *4 (N.D. Tex. Oct. 16, 2006), *aff'd,* 512 F.3d 137 (5th Cir. 2007).

Notably, the Reply does not address Ramey's arguments on specific damages, essentially conceding that Ramey alleges specific damages as to lost sales. The Court concludes that Ramey pleaded sufficient economic harm beyond the defamatory injury as he lists lost business with specific entities. *See* Am. Counterclaims at ¶ 18.  Therefore, the Court **denies** the Motion to dismiss the business disparagement claim for failure to plead specific damages.

### C. Tortious Interference with Prospective Business Relations Counterclaim

Cisco argues that Ramey's tortious interference with prospective economic relations counterclaim is time barred because it is inextricably intertwined with and depends on the defamation counterclaim that, in Cisco's view, is also barred by the one-year statute of limitations. *See Nationwide*, 512 F.3d at 146-47 (applying the statute of limitations for defamation claim to tortious interference claim based on the same purportedly defamatory statements). As the Court already explained, Ramey's defamation counterclaim was timely because it was a compulsory counterclaim. For the

same reasons, Ramey's counterclaim for tortious interference with prospective economic relations is not barred and was timely filed.

In addition, Cisco posits that Ramey's tortious interference with prospective relations counterclaim should be dismissed because Ramey fails to allege an underlying, independent tort. The elements of a tortious interference with prospective relations claim are:

> (1) there was a reasonable probability that the plaintiff would have entered into a business relationship with a third party; (2) the defendant either acted with a conscious desire to prevent the relationship from occurring or knew the interference was certain or substantially certain to occur as a result of the conduct; (3) the defendant's conduct was independently tortious or unlawful; (4) the interference proximately caused the plaintiff injury; and (5) the plaintiff suffered actual damage or loss as a result.

*Coinmach Corp. v. Aspenwood Apartment Corp.,* 417 S.W.3d 909, 923 (Tex. 2013) (citations omitted). Essentially, Cisco's argument is that because, in Cisco's view, the defamation counterclaim and business disparagement counterclaims fail, there is no independent tort or unlawful conduct to satisfy the third element. Because the Court concludes that Ramey sufficiently alleges his defamation and business disparagement counterclaims, the Court concludes that there is an independent tort, and Ramey therefore sufficiently alleges his tortious interference with prospective relations counterclaim. For these reasons, the Court **denies** the Motion to dismiss the tortious interference with prospective relations counterclaim.

26

### D. Tortious Interference with Contract Counterclaim

With respect to Ramey's tortious interference with contract counterclaim, Cisco argues that Ramey fails to sufficiently state a claim because (1) he fails to plead the specifics of any contract with which Cisco interfered and (2) fails to properly allege proximate cause or recoverable damages.

In Texas, the elements for tortious inference with an existing contract are: "(1) the existence of a valid contract subject to interference; (2) that the defendant willfully and intentionally interfered with the contract; (3) that the interference proximately caused the plaintiff's injury; and (4) that the plaintiff incurred actual damage or loss." *Cmty. Health Sys. Prof'l Servs. Corp. v. Hansen*, 525 S.W.3d 671, 689 (Tex. 2017).

As Ramey points out, Ramey plainly alleges the existence of valid contracts, and Cisco does not cite authority on what more Ramey should have alleged with respect to the existence of valid contracts with GDT, City of Richardson, U.S. Net, and Arcosa. The Court concludes that Ramey's pleadings, taken as true, sufficiently allege the existence of valid contracts.

With regard to Ramey's allegations about proximate cause and recoverable damages, Cisco argues that Ramey fails to plead any recoverable damages for his tortious interference with contract counterclaim. However, the Court disagrees. Specifically, Ramey pleads, "[a]s a direct and proximate result of cisco's interference with Ramey's ongoing business relationship and contracts, Ramey has suffered damages including lost profits and wages exceeding $1,000,000." Am. Counterclaims at ¶ 42.

27

Ramey also presents damages and proximate cause allegations in Paragraph 18 of the Amended Counterclaim's. *Id.* at ¶ 18.  In light of pleadings as a whole, the Court finds that Ramey has met his pleading burden with respect to the proximate cause and damages elements of his tortious interference with contract counterclaim. The Court therefore **denies** the Motion to dismiss Ramey's tortious interference with contract counterclaim.

### E.  Unfair Competition Counterclaim

In the Response, Ramey abandons the unfair competition counterclaim. Therefore, the Court **dismisses** the unfair competition claim and need not address the merits of Cisco's arguments on this counterclaim.

### F.  Intentional Infliction of Emotional Distress Counterclaim

Cisco argues that Ramey's intentional infliction of emotional distress ("IIED") counterclaim should be dismissed because Ramey fails to allege facts of conduct that is independent of his defamation counterclaim, and therefore the counterclaim is barred. Cisco also posits Ramey cannot prove the elements of an IIED counterclaim because the alleged defamatory statements are not in the same "stratosphere" of conduct that is extreme or outrageous.

"To recover damages for intentional infliction of emotional distress, a plaintiff must establish that: (1) the defendant acted intentionally or recklessly; (2) the defendant's conduct was extreme and outrageous; (3) the defendant's actions caused the plaintiff emotional distress; and (4) the resulting emotional distress was severe."

*Hoffmann-La Roche Inc. v. Zeltwanger*, 144 S.W.3d 438, 445 (Tex. 2004). "Extreme and outrageous conduct is conduct so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.* (internal quotations and citations omitted). As both parties concede, IIED is "a 'gap-filler' tort, judicially created for the limited purpose of allowing recovery in those rare instances in which a defendant intentionally inflicts severe emotional distress in a manner so unusual that the victim has no other recognized theory of redress." *Id.* at 447. Notably, "[w]here the gravamen of a plaintiff's complaint is really another tort, intentional infliction of emotional distress should not be available." *Id.* at 447-48.

Because Ramey does not allege conduct that is independent of its defamation claim, the Court concludes Ramey's IIED fails. *See Johnson v. Knowledge Learning Corp.*, No. 3:08-CV-0468-P, 2008 WL 11348020, at *3 (N.D. Tex. June 24, 2008) (Solis, J.) ("Plaintiff also has a defamation claim available if she can meet all of the elements. If Plaintiff cannot meet all of the elements of defamation, then her claim for intentional infliction of emotional distress fails, as defamation is the basis for her emotional distress."); *Udoewa v. Plus4 Credit Union*, No. CIV A H-08-3054, 2009 WL 1856055, at *6 (S.D. Tex. June 29, 2009), *aff'd,* 457 F. App'x 391 (5th Cir. 2012) ("Because the allegations underlying the intentional infliction of emotional distress claim are the same as those underlying . . . state-law defamation claims, the intentional infliction of

29

emotional distress claim fails.").  Therefore, the Court **grants** the Motion to dismiss Ramey's counterclaim for intentional infliction of emotional distress.

## IV.  Conclusion

The Court **GRANTS in part and DENIES in part** Defendants Cisco Systems, Inc. and Cisco Technology Inc.'s Motion to Dismiss Defendant Jeffery Ramey's Amended Counterclaims. Specifically, the Court **denies** the Motion as to Ramey's counterclaims for defamation, business disparagement, tortious interference with prospective relations, and tortious interference with contract. The Court **grants** the Motion to dismiss the intentional infliction of emotional distress counterclaim and therefore **dismisses** that counterclaim. Because Ramey states his intent to abandon his unfair competition counterclaim, the Court **dismisses the unfair competition counterclaim** to avoid Ramey needing to amend the pleadings again.

**SO ORDERED.**

Signed August 11th, 2021.

_Ed Kinkeade_

ED KINKEADE
UNITED STATES DISTRICT JUDGE